**Philip D. STIRPARO, Petitioner,**
**and**
**Dale McGhee, Intervenor,**

v.

**STATE of Delaware, Respondent.**

Superior Court of Delaware,
New Castle.

Oct. 18, 1972.

———◆———

Francis A. Reardon, Deputy Atty. Gen., for respondent.

Thomas G. Hughes, of O'Donnell, Hughes & Lowicki, Wilmington, for petitioner.

Wilfred J. Smith, Jr., Wilmington, for intervenor.

## OPINION AND ORDER ON PETITION FOR WRIT OF MANDAMUS

QUILLEN, Judge:

This is a petition by Messrs. Stirparo and McGhee, both inmates, challenging the State's method of computing eligibility for parole as prescribed by 11 Del.C. §§ 4346 and 4372. The Court has considered the application as a mandamus petition. The issue presented requires an interpretation of 11 Del.C. § 4346 as it stands alone, and also as it is to be read in conjunction with 11 Del.C. § 4372. The Court has concluded that the application must be denied.

The problem of parole eligibility has plagued correctional administrators, lawyers and particularly inmates ever since the 1964 Corrections Law. 54 Del.Laws, Ch. 349. Suffice it to say that the statute in this particular is subject to many interpretations and needs to be clarified by precise legislation, possibly with tables legislatively included, so all concerned will understand both the policy and the mathematics of the legislative intent. This opinion is the Court's judgment as to the proper interpretation of the current legislation without any independent effort at policy determination.

It is important to note the narrow issue to be decided here. The petitioners request a court order compelling the State to compute the eligibility for parole on a time basis more favorable to them than the present method of computation. As a result of this application, the Court by legal interpretation must either grant the relief requested, shortening the imprisonment time necessary for parole eligibility, or deny the application. The Court is not required to go so far as to declare an appropriate parole eligibility table if the Court finds the petitioners are not being prejudiced by the present system of computation.

The above remarks become important because the Court, based on the statutory language alone, herein concludes that, while the present system of computation is erroneous, the errors work in the prisoners' favor and not to their detriment. It would, however, be unfair for this Court on this record to suggest in effect a more distant parole eligibility date for every Delaware sentenced prisoner. There may well be legal arguments which would support the administrative practice and executive interpretation of eight years, even if the Court's interpretation of the bare language of the statute differs from the established administrative practice. 82 C.J.S. Statutes § 359. Such considerations have not been argued here.

Consequently, notwithstanding the Court's interpretation, based solely on the statutory language, which from the prisoners' point of view results in a less favorable parole eligibility date, the Court, by the petitions and issues in this case, is not called upon to make an order directing a change in the administrative practice. Moreover, I am not satisfied that this mandamus proceeding has provided an adequate forum for exploration of all the legal issues necessary to decree finally the law of parole eligibility. Eligibility for parole is, after all, a most significant status for those persons who have been sentenced to jail. It would be less than wise to ad-

versely affect the situation of every sentenced prisoner in Delaware without a full debate of every facet of the problem. I, therefore, confine this decision to the precise limited issue before the Court.

One interesting aspect of the current dispute is that no one involved herein defends the computation method currently being used by the Department of Corrections and the Parole Board to determine parole eligibility. None of the varying opinions of the Attorney General's Office support the current practice. And, naturally, the petitioners seek change. I concur that the present method of calculation cannot be defended in light of the statutes. In fact, in my view, the current method of computation is one hundred per cent wrong on the three issues presented.

The applicable portions of the statutes are as follows. Section 4346(a) reads:

"A person confined to any correctional facility administered by the Department may be released on parole by the Board if he has served ⅓ of the term imposed by the court, such term to be reduced by such merit and good behavior credits as have been earned, or 120 days, whichever is greater."

Section 4372 in its entirety provides:

"§ 4372. Rate of reduction of confinement

"When a person has not been guilty of any violation of discipline or any rules of the Department and has labored with diligence and fidelity, diminution of sentence shall be—

"(1) For each month commencing on the first day of his arrival at the facility there shall be a reduction of 5 days from the sentence;

"(2) When more than 1 year of a sentence has elapsed, less the reduction of sentence as provided in paragraph (1) of this section, then from that time there shall be a reduction of 7 days for each month of the sentence;

"(3) When more than 2 years of a sentence has elapsed, less the reduction of sentence as provided in paragraphs (1) and (2) of this section, then from that time there shall be a reduction of 9 days for each month of the sentence; and

"(4) When 3 or more years of a sentence has elapsed, less the reduction of sentence as provided in paragraphs (1)–(3) of this section, then from that time there shall be a reduction of 10 days for each month of the sentence. Added 54 Del.Laws, Ch. 349, § 7, eff. July 8, 1964."

Overall, three issues are raised concerning the proper interpretation of the statutory provisions. In regard to 11 Del.C. § 4346(a), the issues generally stated are to what words of the statute do the phrases "such term to be reduced" and "or 120 days" refer. As to 11 Del.C. § 4372, the sole issue is how are good behavior credits to be calculated. Each of these issues will be considered more specifically in their respective order.

The arguments presented to this Court as to the first issue can probably best be understood if explained and examined in light of two mathematical expressions of such. The argument of the State so expressed is:

$$\frac{\text{Sentence Imposed by the Court} - \text{Good Behavior Credits}}{3}$$

while that of the petitioners is

$$\frac{\text{Sentence Imposed by the Court}}{3} - \text{Good Behavior Credits.}$$

The first formulation is suggested by Deputy Attorney General Durkin and Deputy Attorney General Gebelein in their respective opinions concerning this matter. The second formulation is presently employed by the Department of Corrections. The petitioners disagreement with the Department does not, therefore, concern this aspect of the decision but only the "120 days" provision and the method of "good time" calculations.

As to the first issue and the question of to what words does the phrase "such term" refer, the basis of both opinions rests on the language of 11 Del.C. § 4346 as interpreted by the respective parties. The specific language is "⅓ of the term imposed by the court, *such term* to be reduced" (Emphasis added). Messrs. Durkin and Gebelein (hereinafter, the State) contend that "such term" refers solely to the sentence imposed by the Court. The result of such is that the sentence is first reduced by the good behavior credits before dividing the result by three. However, the Department of Corrections in the past has read this "such term" language to refer to "⅓ of the term imposed by the court." The petitioners agree with the Department. This results in first dividing the sentence by three and then subtracting the good behavior credits from the result of the division.

■ The Court, after fully considering both contentions, in light of the statutory language, has concluded that the State's argument is the better one. The conclusion, in the absence of legislative history from which this Court could more accurately ascertain the Legislature's intent, is the result of a literal reading of the statute.

In order to construe the statute as suggested by the petitioners and as presently applied by the Department of Corrections, this Court would have to accept the argument that the Legislature meant to give the word "term" two different meanings within the same sentence. More precisely, the Legislature would have had to mean court sentence in its first use of the word "term", and the mathematical quotient of court sentence divided by three in the second use.

The Court cannot accept this double use. Absent a clear expression of contrary intent by the Legislature, the use of the word "term" in the good behavior credit phrase in the middle of the sentence comprising subsection (a) should not be en-

larged over its use in the first part of the sentence. Therefore, since it is clear that "term" means "sentence" in its first use, it should have the same meaning six words later when used for the second time by the drafters of 11 Del.C. § 4346(a).

All parties agree that the initial meaning of "term" is "sentence", and this Court applies this meaning to the second use since no contrary intention is apparent. This single use of "term", moreover, results in a plausible construction of the whole subsection. It is unlikely that the Legislature would have taken the apples-oranges approach of subtracting full good time from one third sentence time. Thus, the first mathematical formula outlined above is the proper expression of § 4346(a). If the Legislature meant "such ⅓ term to be reduced", it should have so provided.

■ The second issue is whether the "120 days, whichever is greater" provision refers to the word "served" or, in the alternative, to the word "reduced". The result of this distinction is that if it refers to "served", then the "120 days" provision would in effect be a legislatively imposed minimum before which no prisoner would be eligible for parole. If, on the other hand, the phrase referred to "reduced" such would amount to a legislatively granted gift of 120 days of good behavior credits no matter how undeserving the inmate.

The present system allegedly adopts the second approach, and the petitioners argue for more generous construction of the second approach than currently given. I believe the first approach is correct and thus analysis of the results of the second approach is unnecessary here.

This Court cannot accept the second approach for several reasons. First, the old parole statute, 11 Del.C. § 7705, provided that in order to be eligible for parole a prisoner must be sentenced for a period greater than one year. In effect this provided for the serving of a minimum sentence. If the "120 days" under 11 Del.C. §

4346(a) is read as referring to "served", a similar minimum term of eligibility is maintained. This Court believes that such maintenance was the intent of the Legislature in enacting § 4346(a).

Second, the grammatical construction of the statute likewise supports this conclusion. It is seen that the "such term to be reduced" phrase is set off in the sentence by commas. This punctuation properly separates and distinguishes the subordinate thought concerning reduction for good time from the main thrust of the sentence which is continued immediately thereafter (i.e. the "120 days" provision). At the least, the grammar is consistent with the first approach.

Third, if the "120 days" provision were read to refer to "reduced", the result would be absurd under either formula when applied to a short term prisoner. If the second mathematical formula were used, the inmate sentenced to one year or less would be eligible for parole the day he entered prison.[1] If the first formula herein adopted were used, a similar result would occur for terms of four months or less.[2]

Thus, this Court holds that the "120 days" provision refers to "served", and that the Legislature intended to impose a minimum sentence thereby.

■ The final issue is how are the good behavior credits to be calculated. 11 Del. C. § 4372. More specifically, the "less the reduction of sentence" provisions of subsections (2), (3) and (4) must be construed.

The Department currently credits "good time" by changing the parole eligibility date from the end of the term. Thus, after one year is served, sixty days (five days per month) are taken off the end of the sentence. This approach appears wrong since the statute on its face is on a monthly basis with second year credits beginning "when more than 1 year of a sentence has elapsed, less the reduction of sentence [during the first year]".

In this Court's opinion, the concept of a "good time year" must be employed in determining the maximum rate at which a prisoner can earn good behavior credits under 11 Del.C. § 4372. Counsel has not presented and this Court cannot find any other operative interpretation of the pertinent language of the statute.

Such a "good time year" is equivalent to a calendar year less the maximum number of good behavior credits which can be earned in the particular year. The effect of such a concept is that an inmate will begin his second year of imprisonment for good behavior credit purposes on the 306th day of his confinement. This second year will end on the 586th day, while the third year will begin on the 587th day and end on the 843rd day; etc. Thus, the inmate can earn a possible 60 credits during the first 305 days; 84 additional credits from the 306th day to the 586th day; 108 additional credits from the 587th day to the 843rd day; and 120 additional credits for each additional 245 day good time year thereafter served. By cumulating these credits, it is seen that a prisoner can earn 60 credits in one good time year under § 4372; 144 credits in two good time years; 252 credits in three good time years, etc.

Therefore, by inserting the total number of credits into the above determined formula, the minimum eligibility date can be calculated for any given sentence imposed by the Court except for those shorter sentences of less than 1 year and three months which are governed by the above determined 120 day minimum confinement provision of 11 Del.C. § 4346(a).

It should be noted that § 4346(a) refers to the subtraction of "such merit and good behavior credits *as have been earned*" (Emphasis added). It does not refer to the maximum number of credits which could be earned if the full sentence was served.

---

1. $\dfrac{12 \text{ mo.}-120 \text{ days}=4 \text{ mo.}-4 \text{ mo.}=0 \text{ days}}{3}$

2. $\dfrac{4 \text{ mo.}-4 \text{ mo.}=0}{3}$

Thus, from a reading of the statutory language, without considering other points not argued in this case and specifically without considering the significance of eight years of executive construction, the Court feels the above views constitute the better interpretation of the statute on the three key issues. This interpretation unfortunately leads to some mathematical difficulties which could be adequately handled by a qualified mathematician. I do not so qualify. I will attempt, however, to demonstrate for illustrative purposes the results of the interpretation in this opinion of the statutory language for a two year, ten year and life sentence. The effort is to determine the shortest possible time which must be served before parole eligibility and, given my mathematical talent, the figures must be considered approximate. It is assumed the sentence begins on January 1, 1972.

For a two year sentence, the formula would be as follows:

$$\frac{731 \text{ day sentence}-45 \text{ days good time earned in } 229 \text{ days served (274 days of sentence)}}{3} = \frac{228 + \text{days needed for parole}}{\text{eligibility}}$$

Thus, the prisoner would serve nine months (274 days) less good time (45 days) prior to parole eligibility and would be eligible for parole on August 16, 1972, the 229th day of his sentence. In terms of thirty day months, this would be 7 months and 19 days which compares with 6 months and 24 days (204 days) under the current policy of the Department of Corrections.

For a ten year sentence, the formula would be as follows:

$$\frac{3653 \text{ day sentence}-372 \text{ days good time earned in } 1089 \text{ days (1461 days of sentence)}}{3} = \frac{1093 + \text{days needed for parole}}{\text{eligibility}}$$

Thus, the prisoner would serve four years, five days (1466 days) less good time (372 days) prior to parole eligibility and would be eligible for parole on December 29, 1974, the 1094th day of his sentence. This would be 2 years, 11 actual calendar months, and 29 days which compares with 2 years, 8 months and 27 days (997 days) under the current policy of the Department of Corrections.

For a life sentence, the formula would be as follows:

$$\frac{16{,}437 \text{ days sentence}-2162 \text{ days good time earned in } 4749 \text{ days (6911 days of sentence)}}{3} = \frac{4758 + \text{days needed for parole}}{\text{eligibility}}$$

Thus, the prisoner would serve eighteen years, eleven months and twelve days (6921 days) less good time (2162 days) prior to parole eligibility and would be eligible for parole on January 9, 1986, the 4759th day of his sentence. This would be 13 years, 10 days which compares with 11 years, 6 months and 9 days (4204 days) under the current policy of the Department of Corrections.

As noted before, the above figures must be considered approximate. A sound mathematical approach may differ slightly on figures and on assumptions for the purposes of uniformity in regard to leap years, varying lengths of months, etc. But the above three examples do approximately illustrate the time differences which result from the interpretation of the statutory language set forth in this opinion and the current policy.

The petitioners are in no way prejudiced by the current executive construc-

tion of the parole law by the Parole Board and the Department of Corrections. If there is an error in statutory construction, that error is in the petitioners' favor. Accordingly, no relief is appropriate on the application in this case.

The petition for a writ of mandamus is denied. It is so ordered.